UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD WILLIAM SWALLOW,<br><br>Defendant. | 5:16-cr-50024-01-JLV<br><br><br>ORDER |

## INTRODUCTION

Defendant Ronald William Swallow, appearing *pro se*, filed a motion for compassionate release on August 17, 2020.   (Docket 114).   Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions, and briefing on Mr. Swallow's motion.   (Dockets 116, 118, 119, 123 through 125). For the reasons stated below, defendant's motion is denied.

## STANDING ORDER 20-06

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place a procedure for submission and consideration of compassionate release motions

---

[1]See https://www.sdd.uscourts.gov/so2006 ("SO 20-06").   Standing Order 20-06 was amended on October 21, 2020, after this case was ripe for resolution.   See https://www.sdd.uscourts.gov/socraa.   The amendments have no impact on the court's analysis of this case.

under the First Step Act, 18 U.S.C. § 3582(c)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system.   (SO 20-06 at p. 1).   Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act."   Id. ¶ 1.   The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already.   These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]"   Id. ¶ 4.   Those categories are:

> a.   High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

> b.   Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

> c.   Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

       d.     Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.   The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."   Id.   The standing order contains provisions for sharing of critical information between the FPD, the U.S. Attorney, the Probation Office and the court.   Id. ¶ 5.   The priority of briefing is set according to the different categories of assignment of a defendant.   Id. ¶¶ 6-8.

## MR. SWALLOW'S CLASSIFICATION

On August 19, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Swallow's case as an Intermediate Priority case.   (Docket 115).

## FACTUAL BACKGROUND

Mr. Swallow pleaded guilty to interference with commerce by robbery in violation of 18 U.S.C. § 1951 (count 1) and use and brandishing of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (count 2).   (Docket 49, 50, 71, 73, 74).   On January 20, 2017, Mr. Swallow was sentenced to time served on count 1 and 120 months imprisonment on count 2.   (Docket 92, 93, 95).   Counts 3, 4, 5, 6, 7 of the Superseding Indictment were dismissed upon motion of the government.   Id. Mr. Swallow was ordered to a term of five years supervised release following imprisonment and was required to pay $27,006.66 in restitution.   Id.

Mr. Swallow is currently an inmate at Lompoc Federal Correctional Institution ("Lompoc FCI"), a low security facility located in Lompoc, California. Fed. Bureau Prisons, https://www.bop.gov.locations/institutions/lof/ (last checked Jan. 6, 2021).   The total inmate population at Lompoc FCI as of January 6, 2021, is 906 persons.   Id.   As of January 6, 2021, there were zero active COVID-19 cases for inmates, one active for staff, three inmate deaths as a result of COVID-19, no staff deaths, and 668 inmates and 19 staff had recovered at Lompoc FCI.   Id. https://www.bop/gov/coronavirus/ (last checked Jan. 6, 2021).

Mr. Swallow's scheduled release date is July 10, 2025.   (Docket 116, p. 263).   Mr. Swallow has currently served about 43.9 percent of his statutory term, and under his current status in the BOP, Mr. Swallow's home detention eligibility date is January 10, 2025.   Id. at pp. 263-65.   Mr. Swallow is currently 55 years old.   (Docket 78, p. 2).

### MR. SWALLOW'S MOTION

Mr. Swallow's *pro se* motion seeks compassionate release for extraordinary and compelling reasons based on his age and personal health conditions coupled with the COVID-19 pandemic.   Mr. Swallow alleges he has conditions that place him at greater risk for a serious illness if he contracts COVID-19, including a body mass index ("BMI") of greater than 30 and a family history of diabetes, respiratory problems, heart and blood pressure problems, prostate cancer and kidney failure.   (Docket 114, pp. 2-3).   Mr. Swallow

4

represents his current weight is 215 pounds and he is 67 inches tall.   Id. at 3.

Mr. Swallow's BMI is 33.7.   See Centers for Disease Control,

https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_c

alculator/bmi_calculator.html (last checked Jan. 6, 2021).   Mr. Swallow

further contends Lompoc FCI has ineffective policies and procedures in place to

protect him from being exposed to the virus, and the medical department at

Lompoc is ineffective and has not provided him proper care for his urinary tract

problems.   (Docket 114, pp. 2-7).

In a supplement to the *pro se* motion, defense counsel argues Mr.

Swallow's age, his serious health conditions (particularly his obesity and

mental health conditions), his incarceration, his race and the COVID-19

pandemic, when considered in total, create extraordinary and compelling

reasons to warrant his compassionate release.   (Docket 119, pp. 9-16; Docket

125, pp. 2-3).   Counsel further argues Mr. Swallow's obesity and

schizophrenia place him at a higher risk of developing serious complications if

he contracts COVID-19.   (Docket 119, p. 9).

Mr. Swallow's medical records confirm the following medical conditions:

- Schizophrenia.[2]   (Docket 116, pp. 40-41);

- Posttraumatic Stress Disorder ("PTSD"), potentially with secondary
  psychotic features.   (Docket 124, p. 2);

---

[2]The records reflect Mr. Swallow held a diagnosis of schizophrenia for
many years.   (Docket 78, ¶ 63; Docket 116, pp. 10, 40, 101; Docket 124, pp.
14, 32-34).   Recently, however, he underwent a psychological evaluation on
August 28, 2020, and his symptoms were recognized and identified to be most
consistent with PTSD, not a psychotic disorder.   (Docket 124, p. 2).

- BMI (32.0-32.9).[3]   (Docket 116, p. 40);

- Enlarged prostate with lower urinary tract symptoms.   <u>Id.</u> at pp. 40, 209, 222.

Mr. Swallow's prescription regimen includes Finasteride and Tamsulosin for enlarged prostate.   <u>Id.</u> at 239.   Mr. Swallow was not taking any medications related to his mental health conditions but had requested a follow up medical consultation for this reason after a psychological evaluation on August 28, 2020.   (Docket 124, p. 2).   It is unknown whether Mr. Swallow was prescribed any medications after this point.

In his submissions, Mr. Swallow states his plan if released is to live with his sister in Texarkana, Arkansas, where he indicates he can get work doing remodeling and landscaping.   (Docket 114, p. 8).

## UNITED STATES' OPPOSITION

The government opposes Mr. Swallow's motion for compassionate release.   (Docket 123).   The government argues Mr. Swallow's motion should be denied because there is no evidence his medical conditions render him unable to provide self-care within the facility.   <u>Id.</u> at 10-11.   According to the government, the Bureau of Prisons ("BOP") made substantial changes to its operations to curb the spread of COVID-19 and protect inmates like Mr. Swallow.   <u>Id.</u>   The government further disputes that schizophrenia and race

---

[3]Mr. Swallow's records reflect a diagnosis of obesity that was revised on February 11, 2020 to reflect a diagnosis of "BMI (32.0-32.9)."   (<u>See</u> Docket 116, pp. 7, 101, 235).

are factors the court should consider since the CDC does not recognize either

as increasing the risk of adverse consequences if he contracts the virus, and

there is no evidence Mr. Swallow's health outcomes are related to his race.   Id.

at 11-12.   The government argues that any racial disparity in the impact of

COVID-19 on the general public is attributable to factors such as access to

healthcare and utilization, discrimination, choice of occupations, educational

opportunities and housing.   Id. at 12.   Such socio-economic factors, argues

the government, are not implicated for individuals while incarcerated because

inmates of all races are offered the same access to medical, occupational and

educational services in addition to housing.   Id.

Finally, the government urges the 3553(a) factors weigh against Mr.

Swallow's release.   Id. at 13.   In light of the nature of his conviction conduct

and his criminal history of theft and robbery convictions, the government

believes Mr. Swallow poses a danger to public safety if released.   Id.

According to the government, the nature of the crime itself does not warrant a

reduction.   Id. at 14.   The government contends allowing Mr. Swallow to serve

a fraction of his sentence does not promote respect for the law or provide just

punishment for the offense, which required a mandatory minimum term for

brandishing a firearm while committing a robbery, but instead would create a

sentencing disparity.   Id.   Because this was a serious offense and Mr. Swallow

has served less than half of his current sentence, the government argues he

should not reap a windfall while others similarly situated remain incarcerated.

Id. at 15.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request

for compassionate release after he exhausts the administrative remedies

mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant
> has fully exhausted all administrative rights to appeal a failure of
> the Bureau of Prisons to bring a motion on the defendant's behalf or
> the lapse of 30 days from the receipt of such a request by the warden
> of the defendant's facility, whichever is earlier, may reduce the term
> of imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that . . . extraordinary and compelling reasons
> warrant such a reduction . . . and that such a reduction is consistent
> with the applicable policy statements issued by the Sentencing
> Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The parties dispute whether the administrative exhaustion requirement

has been satisfied.   Mr. Swallow states he submitted a request for

compassionate release to the warden of Lompoc FCI on August 10, 2020.

(Docket 114, p. 9).   But Mr. Swallow's *pro se* motion to the court is also dated

August 10, 2020, and was received and filed on August 17, 2020.   Id.   In

other words, Mr. Swallow neither waited for a denial of his request by the

warden nor the lapse of 30 days before filing the instant motion with the court.

8

The government states that the warden at Lompoc FCI has no record of receiving Mr. Swallow's request and, therefore, administrative exhaustion has not been completed.   (Docket 123, pp. 2, 4).   In response, defense counsel argues "[Mr.] Swallow does not have control over . . . the Warden or the Warden's office . . . and could not control what the prison staff did with his request."   (Docket 125, p. 1).   Defendant argues he did what he could to complete the administrative review process.   Id.

Out of an abundance of caution, however, defense counsel submitted a second request to the warden by e-mail on September 15, 2020, and receipt of that request was acknowledged on September 16, 2020.   Id. at 2.   (See also Docket 125-1, Docket 125-2).   At the latest, the 30-day period for a response by the warden to this request lapsed on October 16, 2020.   Since the 30-day period contemplated by § 3582(c)(1)(A) has now lapsed, defendant argues the court can consider the motion filed on August 17, 2020, on its merits.   (Docket 125, p. 2).

The case presents an interesting procedural posture regarding exhaustion of administrative remedies.   Much analysis could be devoted to that issue alone.   In the interests of judicial economy, however, the court will assume without deciding that Mr. Swallow sufficiently complied with the administrative exhaustion requirement and examine the motion on its merits.

## **Extraordinary and Compelling Reasons**

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release."   United States v. McCoy, No. 20-6821, 2020 WL 7050097, at *3 (4th Cir. Dec. 2, 2020).   That task was left to the United States Sentencing Commission.   "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four categories of extraordinary and compelling reasons for sentence reduction as directed by Congress.   Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling.   U.S.S.G. § 1B1.13 comment. (n.1).   The four categories have not been updated since December 2018 when the First Step Act became law.[4]

---

[4]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]."   United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[5]  See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. McCoy, 2020 WL 7050097; United States v. Jones, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020); and United States v. Gunn, Case No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)."  Brooker, 976 F.3d at 234.  The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances."  Id.  The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable."  Id. at 235. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13,

---

[5]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so.  United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

limits the district court's discretion."   Id. at 237; see also Gunn, 2020 WL
6813995, at *2 (agreeing with the Second Circuit that the Guidelines Manual
"does not curtail a district judge's discretion"); Jones, 2020 WL 6817488, at *9
("In cases where incarcerated persons file motions for compassionate release,
federal judges . . . have full discretion to define 'extraordinary and compelling'
without consulting the policy statement § 1B1.13."); McCoy, 2020 WL
7050097, at *8 ("As of now, there is no Sentencing Commission policy
statement 'applicable' to the defendants' compassionate-release motions, which
means that district courts need not conform, under § 3582(c)(1)(A)'s
consistency requirement, to § 1B1.13 in determining whether there exist
'extraordinary and compelling reasons' for a sentence reduction.").

        The court retains its independent authority "to consider the full slate of
extraordinary and compelling reasons that an imprisoned person might bring
before [the court] in motions for compassionate release."   Brooker, 976 F.3d at
237.   See also McCoy, 2020 WL 7050097, at *9 (same); Jones, 2020 WL
6817488, at *9 (same); Gunn, 2020 WL 6813995, at *2 (same).   The purpose of
the First Step Act was to expand the availability of compassionate release
based on judicial findings of extraordinary and compelling reasons without
being restricted to those categories identified by the Sentencing Commission or
the rationale used by the BOP before the passage of the First Step Act.

        Despite the expanded authority under the First Step Act, the court finds
Mr. Swallow has not met his burden of proof and presented "extraordinary and

12

compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).
Based on the court's detailed review of the medical records, Mr. Swallow's age,
obesity and mental health condition are not extraordinary and compelling
reasons warranting compassionate release.

Mr. Swallow is 55 years old.   The CDC recognizes that the risk of severe
illness as a result of COVID-19 increases with age, with older adults at higher
risk.   See Older Adults, Centers for Disease Control, https://www.cdc.gov/
coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last
checked Jan. 6, 2021).   A person aged 50-64 is four times more likely to
require hospitalization than a person under the age of 29, according to the
CDC findings.   Id.   The greatest risk is for those age 75 and older.   Id.   Mr.
Swallow's age alone is not an extraordinary and compelling reason for his
release.

The CDC indicates adults of any age are at increased risk of severe
illness from COVID-19 if they have certain conditions, including obesity, which
is defined as having a BMI of 30 or higher.   See People with Certain Medical
Conditions, Centers for Disease Control, https://www.cdc.gov/coronavirus/
2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last
updated Dec. 29, 2020).   Mr. Swallow's medical records confirm a
longstanding problem with weight, and he has been diagnosed as obese.
(Docket 116, p. 7).   Though that diagnosis has recently been updated to reflect
a specific BMI category of 32.0-32.9, the conclusion is the same:   Mr. Swallow

13

has a qualifying BMI for obesity.   The medical records reflect Mr. Swallow's weight has fluctuated between 210 pounds on June 20, 2017, 197 pounds on December 14, 2019, and 208 pounds on February 11, 2020.   Id. at 6, 224, 228.   Even at his lowest weight of 197 pounds, Mr. Swallow's resulting BMI of 30.9 put him in the obese category.   See Adult BMI Calculator, Centers for Disease Control, https://www.cdc.gov/healthyweight/assessing/bmi/ adult_bmi/english_bmi_calculator/bmi_calculator.html (last checked Jan. 6, 2021).

   While the court recognizes that because of obesity Mr. Swallow is at a higher risk of a severe illness from COVID-19 if he were to contract the virus, it cannot conclude that this condition alone or in combination with his age is an extraordinary and compelling reason to warrant compassionate release. Several courts, including courts in the District of South Dakota, have concluded that obesity on its own during the COVID-19 pandemic does not necessarily warrant a reduction in sentence for extraordinary and compelling reasons.   See United States v. Williams, CRIMINAL ACTION NO. 15-571-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); United States v. McAbee, No. 4:14-CR-40027-01, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); United States v. Saenz, No. 3:10-CR-30027-01, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant

14

with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons).

Additionally, Mr. Swallow's mental health condition, which has been recently identified as PTSD instead of schizophrenia, does not compel a different conclusion.   The CDC does not identify such conditions as increasing or potentially increasing the risk of severe illness from COVID-19.   See People with Certain Medical Conditions, Centers for Disease Control, https://www. cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).

Based on the court's close review of the medical records, Mr. Swallow appears generally healthy.   Most of his recent medical visits in 2020 have been related to his mental health counseling and urinary/prostate issues, for which he has seen a specialist and been prescribed medications, and dental issues. (Docket 124, pp. 1-36; Docket 116, pp. 86-90, 117-124, 136-40, 151-53, 155-65, 209-10, 222-24).   Furthermore, he appears to be receiving appropriate medical care at Lompoc FCI and, in fact, has recently been referred for participation in the Resolve program to address his PTSD.   (Docket 124, p. 5). Though this was not the case early in the pandemic, it appears now that Lompoc FCI implemented measures to more effectively control the virus within the facility.   Recent reports indicate no active inmate cases of COVID-19 and only one active case among the staff.   See https://www.bop/gov/coronavirus/ (last checked Jan. 6, 2021).

For these reasons the Court concludes Mr. Swallow has not demonstrated "extraordinary and compelling reasons warranting a reduction" as contemplated by 18 U.S.C. § 3582(c)(1)(A)(i).

**3553(a) Factors**

Were the court to find Mr. Swallow's medical conditions "extraordinary and compelling reasons" during this pandemic, the court must still consider whether compassionate release comports with the § 3553(a) factors.   See 18 U.S.C. § 3582(c)(1)(A).   These include "the nature and circumstances of the offense and the history and characteristics of the defendant," among others. Id. § 3553(a).   "[T]he history and characteristics of the defendant" requires the court to consider the defendant as a whole person.   Koon v. United States, 518 U.S. 81, 113 (1996).

In Mr. Swallow's case, the nature and circumstances of his offenses were serious, violent and traumatizing to the victims.   Mr. Swallow robbed three casinos at gunpoint over a six-week period.   (Docket 78, ¶ 6).   The offense conduct, which Mr. Swallow admitted, was detailed in the PSR.   Id.; (See also Docket 50).   To summarize, on August 10, 2015, Mr. Swallow robbed East St. Pat Casino, brandishing a handgun at an employee on duty and forcing her to turn over cash.   (Docket 78, ¶ 6).   He then forced her into a casino bathroom and ordered her to stay there so he could flee the scene.   Id.   On August 14, 2015, Mr. Swallow carried out the same offense at Joker's Casino, but this time he also inserted a loaded magazine into the handgun he was carrying and

16

pointed it at the employee, demanded cash and forced her to stay in the bathroom so he could flee the scene.   Id.   On September 21, 2015, Mr. Swallow and another individual robbed Uncle Sam's Casino, pointed the gun at an employee, demanded cash, and again forced the employee into the bathroom and ordered him to stay so they could flee the scene.   Id.   In total, Mr. Swallow absconded with more than $27,000 in cash from these robberies. Id.

While the government agreed to dismiss charges for two of the robberies and allow Mr. Swallow to plead guilty to only one of the offenses, the court takes all three offenses into account under the 3553(a) factors when evaluating whether compassionate release is warranted.   See 18 U.S.C. § 3553(a).   This is appropriate because the employee victims of the other two robberies were no less harmed or traumatized, nor was Mr. Swallow relieved of the obligation to provide restitution to all three casinos.   See U.S.S.G. §§ 1B1.3 (addressing relevant conduct), 1B1.4 (addressing information to be used in imposing a sentence).

At the sentencing hearing, the court recounted the events and determined the nature and circumstances of Mr. Swallow's conduct justified an upward adjustment from the advisory guideline sentence of seven years and sentenced him to ten years on count 2 for brandishing a firearm during a crime of violence.   (Docket 101, pp. 26-32).   The court explained:

> I do view these crimes in the context of our community as being extremely serious.   We have casino robbery issues in our city

17

and in our region.   Firearms are sometimes, but not that frequently, used.   There are threats someone is carrying a weapon or a firearm, but brandishing it, pointing it at employees, forcing them into a bathroom in the casino so you can make your escape, and doing that at gunpoint or having brandished the firearm so as to put these people in fear for their lives, that's extraordinarily serious behavior and it's at the top end of the level of violence that we see in these casino robberies so far. . . .

> To understand the seriousness of that brandishing a firearm during a crime of violence Congress set a mandatory minimum of not less than seven years. . . .   So Congress views this as extremely serious.   You can understand from what I am saying to you in my statement of reasons that I consider it extremely serious in your particular case as well.   And this is not one robbery, it is three.   So in terms of crimes of violence, it's a significant crime of violence.

Id. at pp. 28-29.

The court imposed a ten-year sentence to reflect the seriousness of the crime, the trauma to the victims, the need for punishment and to protect the public from further crimes, and to provide adequate deterrence to criminal conduct.   Id. at pp. 29-31.   To date, Mr. Swallow has served less than 50 percent of his sentence.   (Docket 116, p. 265).   His scheduled release date is July 10, 2025.   Id.

The court carefully reviewed the submissions by Mr. Swallow in support of his motion for compassionate release and considered the factors set forth in section 3553(a) and the policy statements issued by the Sentencing Commission to the extent they are applicable.   Mr. Swallow has not demonstrated "extraordinary and compelling reasons" warranting a reduction in his sentence.

## ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket

114) is denied.

Dated January 26, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE